All right, counsel. Thank you for your patience. We call up Reliance Stnrd Life v. Newsom. Mr. Bachrach, is that correct? Bachrach? Good morning. May it please the court? Joshua Bachrach. I represent the appellant, Reliance Stnrd Life. And this is an ERISA case, so not just an insurance case, but also an ERISA case. Scintillating stuff. I knew you'd enjoy that. We're appealing from the district court decision in this case that not only was Mr. Newsom covered under this insurance plan, but also awarding to him the maximum amount of benefits payable. Finding that he was disabled and awarding to him those benefits through the date of judgment, even though those decisions were never made by Reliance Stnrd. Now, the biggest issue here is that the district court changed the language in the policy. To be covered under this policy, you have to be an active, full-time employee. And full-time is defined as a person working at least 30 hours during their regular work week. But the district court here switched that language out and looked to whether he was scheduled, which is a completely different concept. And, therefore, that decision should be reversed. The district court, again, wrongly, well, what it did first was it said here are the definitions of regular. And it means typical. It means standard, normal. But then the court said, but we're instead going to look at when he was scheduled to work, which is not a definition word of regular. And it's an entirely different understanding. It's something that the employer sets, not the insurance company, the administrator. I know you're going to be ready for this, but let's get to it a little bit. You've got to deal with Miller. Yes. Because it strikes me that Miller, I mean, doesn't it sort of answer at least some of the question that we're here today to answer ourselves in this case? It does in some ways, and it does so favorably to my client, and I'll explain why. In Miller, the court said that we're looking at the meaning of the term active in the context of the transfer of insurance coverage provision. The transfer of insurance coverage provision applies when the insurance policy begins and whether an employee is now covered under it at the start. That's not the issue here. And there was an ambiguity in that case because you had the policy saying that they don't have to be actively at work, but they're covered if they're eligible, and eligible requires active. So how could they not be active but active? And so in that context only, there was an ambiguity. But again, that isn't the provision in this case. More importantly, we don't dispute that he is an active or was an active employee. The problem here is with the remainder of that definition that he was not regularly working 30 hours a week. But Miller says they agree with the Sixth Circuit, I guess, that the term regular work week must be construed to refer to an employee's job description or his typical workload when on duty. I mean, it sounds like we're getting very close to what the district court did in defining regular work week. Are we not? No. How is it different than a scheduled work week then? Okay. For a few reasons. One is it says or his typical work week. But let's look at the first part of that, which says an employee's job description. The employee's job description in this case is at LTD 343 through 345, and it does not identify hours. So when you're looking to see does his job description require him to work 30 or more hours? No. So then it says or his typical workload when on duty. So what's his typical workload when on duty? Well, we know that. The district court decision set forth in great detail and put whys for yes next to those weeks when he actually worked the required number of hours. And when you look at it, it's six out of 20 or so weeks, depending on which date you're looking at. If you're looking at the court's revised onset date of October 23, only two of those five weeks did he regularly work the required number of hours? And he was off for an extended period of time for several months before September 2017. So when you look at the evidence here, when you look at whether he was working regularly 30 hours a week, which is the language in this policy, the answer is clearly no. And you have to look at the language in this policy because that's what the Supreme Court has said. In Cigna v. Amara, the court said that you have to interpret, interpret, not rewrite the language in a plan. And in this case, by switching it to schedule, it's rewriting it. It's contrary to the plan document rule under ERISA. So why did the district court here do this? It said that this would account for any variations in hours. But so does the word regular. Because we're not just looking at, okay, the week beforehand he did not work 30 hours, therefore he's not covered. As you can see from what Reliance did, and the district court in its own way did too, it looked at the composite of hours over that extended period. And it found that there was not, Reliance found that there was not a regular working of 30 hours a week, and therefore there was a lack of coverage. The court also justified its actions by saying that this leaves it to the employer to decide who's eligible for coverage by just listing them as scheduled. But that's contrary to the language of the policy too, which says it's up to Reliance to decide who's eligible based on the terms in the policy, not based on a schedule. Because the district court here even said that as long as a person – But it's not based on a week-to-week determination that Reliance gets to make either. I mean, in other words, the problem I foresee with your interpretation of regular work week is that it gives Reliance the ability to pick this week but not that one, or to define some completely undefined magic week where that's going to be determined or dispositive, right? Where's all of that? Well, there's actually a case that that was the argument that was made by the claimant. And the court rejected it, saying that might be an argument, but that's not what happened here. And it's the same situation here. That's not how Reliance Standard looked at it to say that, aha, the week before, you did not work 30 hours, therefore you're not covered. Or that week, you did not work 30 hours. It looked to the regularity. And no matter how you slice the facts in this case, when you look at it, before September, he's not working for months and months and months. And then from September to January, when he stops working – But the phrase we're looking at – I'm trying to keep this in my mind, counsel. I'm sorry for interrupting. But the phrase is regular work week, correct? Right. Not regularity or working with regularity during a week, right? In other words, are you conflating regularity with regular work week? No. So the word regular is defined to mean normal, typical, standard. And his normal work week was not 30 hours. His typical work week was not 30 hours. It was very, very infrequently 30 hours. And that's why it was found that he did not satisfy the requirements in the policy. But going back to what the district court said was, as long as the employer schedules him, even if he doesn't work those hours, he would be eligible for coverage. So looking at that, an employer could say, I'm putting this person who had a horrific accident, they're disabled, they can't work, I'm keeping them on schedule just to maintain their life insurance. And that's the Norris case, which I'm going to discuss in a minute. And according to the district court, that person would be eligible because the employer simply listed them. That is an unreasonable conclusion to reach. But that's not this case either, though, right? In other words, his regular work week up until, I guess, October 20th or so of I can't remember which year at this point, was to get 32 hours a week, right? And then there was this hinge moment, so to speak, where the company said, well, we're going to transition him to part time. But from October 23rd, the following Monday, Reliance found him to be disabled, at least under the short-term disability determination, right? Well, that was because that was a different policy, a different record. It did not have the work records from the employer at that time. It relied on the claim statement. There was this moment where the employer said, your regular work week is now part time. We're going to go down from 32 hours to part time work. And from that point forward, though, doesn't Reliance then look to some weeks after that fact to say, well, see there, he wasn't working 32 hours or 30 hours? You have to look at the prior. In other words, before the claim is when you start to look at the situation and see where they regularly worked. And in this case, that's a moving target because it was a January 29th, like you first said. Well, it's October 16th. Is the district court's finding that the date is October 20 or October 23rd, is that a factual finding entitled to deference? No, not at all. This court has said that you reviewed de novo a district court's decision in an ERISA case. The record's the same. There's nothing in the record that would give a court any reason to make any credibility determinations. It's a paper record, the same paper record that you have. Prior to October 23rd, was his regular work week over 30 hours a week? Prior to October 23rd, not regularly. And the policy, by the way, says working. It says working. So working isn't the same as being scheduled and isn't the same as the employer saying, well, we believe he should be covered. Literally, the word working is in the policy, and that requires action, not just a status of being listed by the employer. So when I look at the district court or the Sixth Circuit decision that you referenced, Your Honor, I do have a problem with it In a prior case, Turner v. Safeco, the Sixth Circuit said that active means actually working. But then they took a step back, and they said, well, in this situation, we think it isn't. You've got a problem with Wallace, to be specific. That's the Wallace case out of the Sixth Circuit, yes. The problem is our prior panel in Miller followed Wallace. So whether we agree with it or not, I think that it's a binding precedent for us, is it not? You follow it in the context of a transfer of insurance coverage provision, which was the same issue in Wallace. This case does not involve a transfer of insurance coverage issue. And again, the issue in that case was active. In most of the cases that are cited in this case, the question has always been whether the person was active. And we don't dispute that he was active. He was working. Most of these cases involve a person who stopped working at some point, and you try and find out if they're still covered. But he was still working. So the question here is really the other side of the equation, whether he was regularly working at least 30 hours a week. Was it his typical, regular, normal work week to work 30 hours a week? And it wasn't. And going back to what the district court said, and, Your Honor, Judge Wilson, you said there was some sort of a turn here, and that as of October 23, he was then part-time. That's incorrect, too. The district court cited to two places in the administrative record, but neither of them supports that conclusion. And we know it's not supported because, look, two weeks after he stops working and claims total disability, right, two weeks later in November, for four consecutive weeks, he's listed as having 30 or more weeks, including some days where there is vacation scheduled. So why would an employer, when he only has to work 28 weeks, list him as having 30, including vacation? It makes no sense. So the district court was wrong, and the district court based its disability finding on that schedule change, the perceived schedule change, which, again, does not exist. So the court relied on these inferences, which don't exist in the record. It's kind of like the treating physician rule, which the Supreme Court has said you can't rely on those inferences. You have to rely on the facts in the record, and the facts in the record are when he worked. And when he worked is demonstrated, it's listed by the court, the district court in its decision, and he did not regularly work the required number of hours. And, again, I mentioned there's a Northern District of Ohio case, Norris, where the court agreed that the person wasn't covered. And what the court there said, that the requirement for coverage is that the employee is full-time, meaning that he or she work at least 30 hours a week, not that they be scheduled. And that court found no ambiguity. And I think that is the important part here. So we also have the problem here where there are so many alternative dates that were given. Was it January 29th like he initially claimed? Well, he had to go back on it because the employer said he was not regularly working the required number of hours then. So then he goes to October 16 in the administrative proceedings. And that didn't work either. So now in litigation, he raises a new post hoc argument and says it's October 23, and the district court allowed it. And that was wrong because under Shadler v. Anthem, you can't raise post hoc arguments. A district court is not allowed to make a decision in the first instance on coverage. It has to be remanded at the very least. It has to be remanded to the plan. Now, counsel is going to argue to Shadler involved the higher standard of review. But in the Anthem case, the court said that to allow a court to make the decision in the first instance would bypass the procedures under ERISA. Those procedures apply regardless of the standard of review. So Shadler is directly on point. But do you need to go to that issue? Do you need to look at whether he was eligible for coverage? Should that be remanded? No, because there's no evidence to support that fact. We have the evidence in the record, and he was not regularly working the required. What's your bottom line somewhat, as I asked counsel in the other case? What's the holding you want us to make that the trial court erred in construing the language? What's your articulation? Are you seeking a remand, or are you seeking for us to exercise plenary authority de novo on the language? Good question, Your Honor. That's why I ask counsel. I try to ask good questions, you know? And you are, Your Honor. So it's a multifaceted, because the judge did more than just. So I think the holding is that the district court erred in not enforcing the language in this policy. Therefore, the decision needs to be reversed and vacated. But even if the court holds, even if this court holds that the district court correctly found coverage, the issues of whether he remained disabled through the date of judgment and the amount of benefits must be reversed, has to be, because those issues were never decided by reliance. There was never a record developed by reliance on those issues. This record closed in May of 2019. Why wouldn't it be more straightforward in, you know, if, as you argue, we were to determine error, we decide what the error is and send it back down for, you know, proceedings not inconsistent with that, as opposed to us saying error and then sort of parsing and doing the rest. Do you follow what I'm saying? I am. If Your Honor, if this court finds that the policy was interpreted improperly, then the decision should be vacated and judgment entered for reliance. There's nothing else for the court to do. But if this court believes that the coverage decision was correct, and I don't think it should, obviously, that's why I'm here, then at the very least, the issue of whether he was disabled through the date of judgment and the amount of those benefits have to be remanded, because, again, the court awarded benefits through September 2020. How do we know he didn't return to work between the date the record closed in May 2019 until September 2020? How do we know, and as far as the calculations go, by the way, how do we know he didn't return to work and earn money, which would reduce a benefit amount? How do we know he didn't get Social Security, which would reduce the benefit amount? The district court here said, well, the administrative record doesn't have any of this evidence. Of course not. That wasn't the issue that was being decided. And how could reliance standard know in May of 2019 whether, by September 2020, he'd still be disabled or receiving Social Security or returning to work? So the district court clearly erred in awarding benefits through the date of judgment and in the full amount without any record being developed on what those benefits should be. Didn't reliance have an opportunity to develop the record as to whether Newsom was actually disabled? Through May of 2019, but the court awarded judgment through the date of September 2020. And the other issue there, Judge Higginbotham, is other courts have said that you don't have to hedge your bet by making other decisions that are contrary to your finding. There's the Palkovich case we cite. So we said there's no coverage. So if we're saying there's no coverage, why do we then have to say, oh, and you're not totally disabled? What do you do about Vega? Vega, I've got his language in front of me. It says we want to encourage each of the parties to make its record before the case comes to federal court to allow the administrator another opportunity to make a record that discourages this effort and allowing the case to oscillate between the courts and the administrative process prolongs to a relatively small matter that in the interest of both parties should be quickly decided. The claimant only has an opportunity to make his record before he files suit in federal court, so it's unfair to allow the administrator a greater opportunity than before. That's what we said. That's correct, Your Honor. And that decision in Vega has been looked at since then, and, in fact, Judge Stewart and Killen versus Reliance, I believe you authored that opinion, addressed it as well. And what the court held was that generally the court is limited to the administrative record that was developed, not a subsequent record. So there is inconsistency in the Fifth Circuit decisions on the evidence. I understand that. I'm trying to say I didn't write clearly, counsel. Oh, no, your decision, I think, was well. See, now you've got me caught because I believe Judge Higginbotham authored Vega. Oh, I see. So you left me in a quandary here. We have the plexiglass between us. I think that. You don't have to tell me I did wrong. Many people do. I would never say that, Your Honor. I would say that what was stated in Vega was elaborated on and clarified in the Killen decision by Judge Stewart. Able counsel is able to rescue himself from being marooned out in the deep water. Not your first day in court, right, counsel? Probably my best. You did well. A good segue. But, no, thank you for your opening and helping to clarify. You've reserved your rebuttal time. Thank you. All right. Thank you. All right. Mr. Thompson, we'll hear from you. How do you get to keep what you have? May it please the Court. My name is John Thompson. I represent Appalachian James Newsom. You represent him down below? Yes, I represent him. Great. We love having the lawyers that were there when it happened. All right. I was there, Your Honor. This is a case, the argument you just heard, Reliance wishes this had been a summary judgment case, not a bench trial. Reliance wishes this was an abusive discretion review by the trial court, not a de novo review. And Reliance wishes this policy had been written the way they are saying now as opposed to written the way it was. Well, it may wish that those were the changes. That's not the situation. The case that we have before us is a case that was tried to Judge Ogbee. It was a bench trial. It was on an agreed record. Rule 52 clearly applies. Rule 52 does not require magic words to say we are invoking a Rule 52 trial. Rule 52 applies when you try the case to the bench, whether there's live testimony or documentary testimony. When the judge acts as the fact finder, Rule 52 applies. But it's Rule 52, and you're correct to remind us that it's not summary judgment, but typically when we get these arrest of cases, you know, our starting point is, you know, all the power of the administrator, you know, with the plan, you know, we're looking at the language and so forth. So although a bench trial, as far as I can tell, there are not any undisputed facts, are there? I believe you heard a number of things. Okay. All right. Well, let's just start at . . . The last dispute was regarding the dates of the . . . All right. Well, just not deviating from your argument, but just with ERISA, you agree we normally start off, you know, looking at the plan, the language there, et cetera. And so though a bench trial and a no vote review, you know, we've got a big dispute over what this regular work week means. So typically, don't we look to the plan and, you know, how that's construed as opposed to what the district court did? I'm not taking aim at your argument, just trying to zero in. It is an ERISA case. You're right, it's a bench trial. But just on that point, how does this differ, I guess? This differs once the Fifth Circuit, through Arianna M., decided to join the rest of the country, the rest of the circuits, that a de novo review would in fact mean a true de novo review, that rather than the deference to the administrator, that the trial court would hear the evidence, would review the record, and would make a decision in that first instance if the administrator failed to do so. With the advent of Arianna M., there became that differentiation. If a case was subject to abuse of discretion, Judge Stewart, what you just said is exactly how it applied, and it applied ever since Pierre in 1991. But with Arianna M., we now actually have the opportunity for both abuse of discretion cases and those where there was no abuse of discretion delegated to the administrator. In those situations, the default is a de novo review. And we all know de novo review means the judge looks at it afresh, with no deference. The plan here, as I understand it, does not delegate any discretionary authority. And so after Arianna, the district court is required to review both the fact and the law de novo. So the rationale of Chandler supporting the remand is simply not here, in my view. That's two different things. If you're talking about a review of the district court's decision versus, in turn, a review of a delegation to an administrative agency, those are different things. And that's the context in which we say that you shouldn't have multiple bites at the apple. But I think that's essentially what you're saying. Certainly, Your Honor. You do not get a—if you are the administrator— I know you agree with the results of it. If you're the administrator and you get it wrong, the district court gets it right. The district court does not send it back to the administrator for a second bite at an apple to come up with new ways to deny a claim, to be more creative, to try to better substantiate the denial. The case law developing in the Fifth Circuit, because Arianna M. is so recent, there is not really Fifth Circuit guidance per se on how to conduct a de novo trial. Fortunately, Judge Mazant in the Eastern District Sherman Division, accepting and adopting a report and recommendation by Magistrate Judge Craven, did a very detailed analysis. Because there was no meaningful Fifth Circuit analysis of how to conduct a de novo trial, they looked at the Kearney case out of the Ninth Circuit. It is a very detailed opinion. It walks through the process. I think it was a very informed opinion. That case has been relied upon by the lower courts. Judge Godby relied upon that in this Newsom case, as well as in the Chavez case that followed it. Magistrate Judge Ramirez looked to that case for guidance in the Revels matter. That case has become one that most of the district courts look to because it was the first to come out of the district court's reasoning, well, now after Arianna M., we have this de novo review. What does de novo review mean? They all have reached the same conclusion as what I just stated. Judge, as you were saying, that there is no reason for remand. There is no reason for a second bite of an apple. That would defeat the purpose of de novo review. Counsel, let me just make sure I understand your argument. De novo review, your position is that it is not just a de novo review of the initial determination, so to speak. Whether your client was covered, was eligible, right? In other words, Reliance came in and said not eligible because he wasn't regularly working full time, regular work week, based on its reading of the terms of the policy, that Mr. Newsom was not eligible to be covered under the policy, period. That's as far as they went. Your position is that the de novo review is not of that determination, but of the whole ball of wax. In other words, it is belt and suspenders. It is incumbent upon everybody, the claimant as well as the administrator, to present every theory, not only eligibility, but also disability, but also what the benefits were, the whole ball of wax. Is that correct? Yes, Your Honor. You must remember, this is a risk of disability matter. The administrator is in a fiduciary capacity. When you consider if they failed to do something on the front end and now it goes through litigation, who would best bear the burden of having to deal with that delay? I mean, Counsel, it's not so much that they failed to do something, it's that they reached the point of saying this person is not eligible, period. Why would they go further before it was reviewed by the district court? Your Honor, if you'd allow me to. Counsel said something about hedging bets, and I know that's in the case law, so how is he not correct about that? That was a case under the abuse of discretion. Most of the cases that Reliances discussed with you as to why Judge Galbraith got it wrong are abuse of discretion cases. But you'll agree with me, Counsel, that it feels a little bit strange to not send it back for determination when there was no determination at all, given that the administrator found that Mr. Newsom was not eligible for benefits. In other words, they made no disability determination. So far the cases that have examined this all say they made their decision and they have to live with what they decided on. If they did not do the full job, if they did not look at everything, that should not be held against the individual. That the trial judge in a de novo review is amply qualified now to make the decision. That is what de novo review was. That's what it is. Judge Godbee in the Chavez case came out three weeks after the Newsom case. He commented, and this was against Chavez v. Standard Insurance, to permit Standard now to assert that basis for denial when it declined to assert it at the administrative level would violate the purpose of ERISA's written notice requirements. In essence, when Standard elected not to raise any occupation at the administrative level, it in effect doubled down on the stated basis of its administrative denial. Having lost that bet, it must pay now. This case, as well as the Revels case I mentioned a moment ago, all address the fact that there is no need to send it back for that initial determination. That if the insurance company wants to deny a claim without taking further action, it must live with the consequence of that decision. Counsel, the consequence of this decision might be very good for your client, since he won in the district court in terms of getting disability benefits. But the consequence of our decision here isn't the practical effect of that going to be that administrators are then going to turn every stone over so that not only eligibility, you're going to wait for disability. You're going to wait for this determination, that determination, and the other. Isn't it going to protract getting benefits to people who deserve it? Or am I wrong about that? Your Honor, I believe it actually benefits and accomplishes the goal that you would like to see. If the insurance company knows that it has a certain amount of time and it needs to give a full and fair review, a fair review of an individual's disability claim, then they will take the necessary action. They will not do what we have in the present time. What we have is an insurance company said, first of all, the insurance company actually agreed with me on all aspects and awarded short-term disability. They found the disability date to be October 23rd. The judge did not find that date on his own at trial. That was a date that Reliance had itself already determined also. But what we have is an individual who was awarded short-term disability benefits by Reliance. Reliance decides to move the goalpost by coming up with a contorted interpretation of the plan. It denies his benefits. Now he has to go through an appeal process. He has 180 days to file an appeal. They have 90 days to evaluate whether or not they're going to accept and reverse themselves. When they don't do so, we end up in litigation. Mr. Newsom has been 38 months without receiving a penny of long-term disability benefits under a provision of the policy that has been, arguments have been rejected coast to coast. The Fourth Circuit, the Fifth Circuit, the Sixth Circuit, the Tenth Circuit, Central District of California, District of Massachusetts here just recently, these arguments you heard today about the interpretation have been soundly, unequivocally rejected. As to eligibility. As to how to interpret the eligibility provision of Reliance's policy. So Mr. Newsom is in a situation now where after 38 months he still hasn't received a penny, and Reliance is saying, well, even if we got it wrong, it should come back to us and let us take 90 days to now evaluate the medical. And if we get that wrong, he could file his appeal within 180 days and we'll take 90 days to decide whether or not to reverse ourselves. And if we don't, we can come back to the trial court again. But the trial judge has already reviewed all this information. There is a fully developed record. Reliance had already examined all this information  And the long-term group said, don't look at it, just deny it on coverage. So to your point, if they had to actually do their job, if they adhered to their fiduciary obligation, this could have been taken care of at the administrative level and then we wouldn't have the question you were asking because it would all have been done. No, go ahead. I'm sorry. I was just going to go back up to step one. And counsel says Miller is distinguishable. What are your thoughts on that case? I disagree. I believe that is why, as I believe you noted earlier, the case just right on the surface. It was dealing with two issues. It was dealing with active. It was dealing with the meaning of a person's regular work week. As the court said, we also agree that the term regular work week must be construed to refer to an employee's job description or his typical workload when on duty. Now one thing I heard over and over from counsel for Reliance was that the policy, he kept using the term, well, Mr. Newsom was not regularly working at least 30 hours, was not regularly working at least 30 hours. The policy does not say regularly working 30 hours. The policy said that he's working for Loretta in his regular work week, 30 hours in his regular work week. It's a very straightforward and simple provision. Each court that has reviewed that provision has agreed with what the lower court stated here. And in the present case, Reliance said that, well, the word schedule, somehow thrown in the word schedule has completely rewritten the policy. No, schedule is simply looking to see what does during a person's regular work week mean. In Miller, they said typical work week. Judge Godbee, in the underlying case here, looked at the definitions and said typical, his normal, his standard, his scheduled, all of the terms that basically said when we're looking to see an employee of whether or not they are eligible for coverage, we look to see what the employer had them scheduled for. What was their typical work week? What was their scheduled work week? What was their normal work week? Each court that has looked at this, just like in the lower court here, each court has said you have to have some type of stability that you know is an employee covered or not. And the policy does not say working 30 hours each week. It does not say regularly working 30 hours per week. Reliance is well aware of how to use the term actively at work or actively working, active work. It is a defined term in the policy. Each time they want to make sure that somebody is, in fact, actually performing hours, they say they utilize the defined term, actually work, actually working. They use that defined term. What Reliance is trying to do presently is itself rewrite this policy to somehow say that full-time, which simply says you need to work for the company 30 hours in your regular work week, somehow means you have to be working 30 hours per week for the company. And that is not what this policy says. And, in fact, if you look at the definition of active work week, the definition actually says somebody who is actively working as a full-time employee. Full-time, with what it means, is then incorporated into actively working. So with contractual construction, that would simply be circular to say that actively working, that is defined using the term full-time for one component, means the same thing as what full-time means to start with. You made a point when you started to say, you know, this is not summary judgment. This is a bench trial. All right. Miller was summary judgment. So we need to be clear about who is on first, who is on second, and third. It is summary judgment. So I ask, A, whether it makes a difference, mainly because you started off saying there is any summary judgment. But to the point, Mr. Bacharach over there was counsel in Miller, so assuredly, you know, he made the astute arguments making. Now, that case dealt with a transfer provision or something, so I'm not quite sure whether that matters or not. But the pertinent ruling, you know, in terms of what is work week meant, you know, the panel followed Wallace and said, we agree the term regular work week must be construed or referred to employee's job description, typical workload, et cetera, et cetera, referred to reliance as reading is convoluted. So my question is, is our job as simple as just saying, see Miller, end of opinion? Your Honor, I believe it is. I would also ask the court with regard to any of this other remand affirm the fact that the de novo process that the judge followed in this case, like the de novo process described in the Pike case by Judge Mazant, is the proper way to address a de novo trial in this circuit, just as it is in other circuits. Well, but I'm saying, do we have to, I mean, for you to prevail, do we have to get into all of that? I'm just saying, at least as I understood it coming in, one of the key issues for us was, did the district court err in interpreting, quote, regular work week? That's what I thought one of the issues was. And so I'm saying, at least as to that, for us, is it see Miller? I mean, the ink's still dry on it, but the panel embraced it and says what it says. So I'm just saying, are we bound, I think Judge Wilson asked that, maybe of other counsel, you know, bound by the language construing regular work week? Yes, Your Honor. That is a legal determination. This court addresses legal issues de novo. This court interprets a policy. They have interpreted the policy in the prior panel. So my answer, again, is yes, Your Honor. So as to the disability onset and the rest of that, that's just kind of caught up in the bench trial aspect of what the court did? We have a finding of fact of when the disability occurred. We have a legal interpretation of the policy. He applied the interpretation of the policy to the date the disability occurred or the onset of disability, and we have the opinion. So the date of disability was a factual determination. The U.S. Supreme Court has said those determinations are not disturbed unless clearly erroneous. There has been no clearly erroneous established here with regard to the factual findings. And, Your Honor, real quickly with regard to the it was a summary judgment of Miller, recall the remedy was to return the case to the district court to make the finding of the amount of damages, not to send it back to the insurance company. They told they were sending it back to the judge to do exactly what the judge in our case has already done. Okay. All right. Thank you, sir. Appreciate your arguments. All right. Back to you, Mr. Bacow. Well, so as you come, no, come on. I mean, you know, what's up? Well, I am reading your name right here in the case unless you got a twin with the same name. Actually, there is an attorney with my exact same name practicing law. Uh-oh. This was me. All right. I wasn't expecting that answer. But seriously, you know, the case is there. It's reliant seemingly because I may be missing it. I think this language that we started does seem to be the same. I know your initial response was, quote, it's distinguishable. I got that. But, I mean, ground down in there, how do we get past what the panel just dunked and wrote about that language? I think Your Honor actually answered that. When you were reading it to counsel before, you said in the context, the meaning of active, in the context of the transfer provision. Transfer provision doesn't apply here. We're only looking at . . . Even if it doesn't, the language still . . . I got it. You know, you're right. Okay, I see it. It doesn't matter. There's some . . . But at some points, you know, every case has got some aspect that's somewhat different. But ground down, Judge Duncan and the panel are looking at this language. What does the term regular work week mean? And they say it's job description, typical workload. I'm just having trouble with understanding how that's different. Looking at language in an ERISA plan with Reliant, with you, saying that . . . How do we say something different? Well, you say, okay, the court referred in Miller to the job description. And as I told you, you look at the job description in this case, and it doesn't mention any number of required hours. So plan B, it says, or their typical workload. And the typical workload is the same as regular. His regular workload, the typical hours that he worked. And we see from the evidence that was provided that typically, regularly, he did not work at least 30 hours. So that's how you distinguish Miller. And all the cases, the counsel said all these cases that found against them on this issue, they all dealt with something completely different, related but different. Because in those cases, the Carlisle case, he stopped working. But the court said that before he stopped working, he was regularly working, therefore covered. Tester, she stopped working. Ministry, he stopped working. But in this case, we don't dispute that he was active. So those cases all dealt really with the question of active, not with whether the person regularly worked. We didn't dispute that Mr. Miller in the past regularly worked. But it still seems that at the heart of at least part of your argument is it's not job description, it's not schedule. It's real time. Where was the warm body within the scheme of it? And it still seems to me your argument there was you look at the warm body. And if the warm body was not doing what the description, ergo, end of it. It seems that Miller says, no, that's convoluted. We look at job description. We're not looking at warm body. So transfer portal or not, it just still seems to me regular workweek is the gravamen of the focus, not transfer portal and so forth. But you're talking about, well, we look past something else and look at this to have an operational definition of the term when it just looks like Wallace and the panel have said, no, you're the plan administrator. If you mean something different, put it in there, whatever. If it's in here like this, it just seems that the panelist says regular workweek means this. So what am I missing? I don't think you're missing anything, Your Honor, but it set forth a definition for regular workweek, saying that it's the job description or the workload that he typically performs. But as I said, the evidence in this case is there is no job description saying that he has to work. There's a schedule, but schedule is different. Schedule can fluctuate. Schedule can change any day. And court didn't use the term in Miller's schedule. It used job description, and there is no job description in this case. Counsel didn't point out any that says that this job requires you to work at least 30 hours or under 30 hours or whatever. So then it says or your typical workload, and we do have evidence of that. And so let's look at that evidence, and as I said, that evidence doesn't support it. Bench trial. Not summary judgment, construed against the non-mover. Trial. Rule 52. Trial judge. Construing it. Looks at it. Makes the call. So, you know, looks like that's a little bit different. If the evidence is there, you put it in. I don't mean you, but the record is there. You heard Judge Stigma's question. Okay, record is what it is. So if it's a trial, y'all got past summary judgment, we get plenty of those, but we got a trial. So he makes the call based on what's in front of him, notwithstanding how you may differ on the facts, but us, if we're looking at having made that call, I'm just saying how do we upset that applicant. I'm not speaking for what the panel is going to do. I'm just saying it just does make a difference if it's a trial. Well, there are a few reasons why that shouldn't apply. As we argued in our brief, we never agreed to a Rule 52 trial. We were never told there would be a Rule 52 trial if you look at the scheduling order. Well, you didn't agree to it. If I look in the record, am I going to find you preserved an objection, yada, yada, and all of that? It wasn't brought to our attention until we got the decision. Huh? It wasn't brought to our attention. You were drug as a hostage to the trial? There was no trial. There was an oral argument just as you would have in any ERISA case based on an ERISA record. It was a trial. I mean, I was a trial judge. I had plenty of them. There was two witnesses. It took an hour. There were no rules. I'm just saying it's a quota trial. Every trial is not five weeks in sequestering juries. You call the evidence. You put it on. This is a paper case. It's put in. It's just the point being it's not Rule 56, a summary judgment. It's a trial. It's a trial. Whether you say you knew about it or not and the schedule and order, we're not into that. We own appeal. If it's a trial and the judge says, this is trial, I'm deciding, and you're putting it forward, putting past whether you knew about it, I'm just saying in real time, you're not disputing that that's what it was, right? I am. He never said that. He just said we're having argument on the record. Okay, so what's the posture of what we have? I'm sorry? What is the posture of what we have? So what happened was we had, as we do in every ERISA case, we had an argument, and we argued our positions to the court based on an ERISA record, and the court later said— Well, if it's not summary judgment under Rule 56, what is the procedural mechanism that this was before Judge Godbee? The judge decided. But, of course, in the Miller case, the judge decided I'm reviewing it under 56. So should a judge make a decision on how an appellate review is going to take place? Well, you don't have an issue on appeal for us that the judge usurped the code of procedure and had a trial. I mean, that's not an issue, and I'm not trying to be facetious with you. I am struck by the argument that it was a trial under the judge and, you know, somehow unbeknownst that that's what it is. It clearly is not Rule 56. But that notwithstanding, my only point in asking you is that if it is a trial and the judge made the determinations, however we might, you know, do something different, but if it's a trial de novo and the judge did it, I'm just not following the argument that if the court said we're ready to work, how we undo that or send it back and say do more? Well, there are two reasons. One is that this court has already stated that the summary judgment standards are just the vehicle to get to the issue, that you don't follow the strict summary judgment standards. So why should a judge say, you know what, even though you're just calling it something different but it's the same way of reviewing it? I'm not getting hung up on labels. Don't get me there. Okay. I'm just saying I noted your argument about Miller was when you came up initially, it's distinguishable. That's what you said. Did you not? All right. And so you said it was distinguishable. One way to distinguish it might be a summary judgment. Others transferred. Got that. Counsel gets up, first thing out of his mouth says this is not summary judgment. This is Rule 52. Okay. So that puts us in the procedure. And so I'm like, here's what Judge Duncan and the panel is. No dissent on this language. And I'm saying you heard the argument about Vega, and so I'm just saying this is not summary judgment. So whatever you want to call it, the judge made these determinations, we got a record here, and so forth. So as an error correct in court, I'm just trying to understand how we get past what we got. I think I could make it even easier. Okay. Because even in any case, even in a bench trial, mixed questions of law and fact are reviewed de novo by the court. And that's what we have here. We have a mixed question of law and fact. And questions of interpretation are clearly reviewed de novo. And that's, again, another issue here. Did the court misinterpret schedule? And that's funny because counsel had mentioned that, look, regular means typical. It means, I have it written down, he gave all these other words. In other words, scheduled. But scheduled isn't a synonym. It's not part of any definition of regular. All right. Well, we have your argument on that in a brief. I'm not shutting you down. I just wanted to zero in, you know, on A, Miller's vitality or not, since you are able counsel there. And the language is there. Versus the whole notion of, okay, send back more fact findings and all that. And I think you've answered. I mean, we have your position on it. You've articulated on the language and about he had no schedule and so on and so forth. I mean, I got that part. So finishing point? Yeah, go ahead. Just a finishing point. Because it is something different. The interpretation is different than what the district court did to say, I'm awarding benefits and I'm awarding them in the full amount with an undeveloped record. That doesn't deal with the standard of review. That doesn't deal with a bench trial. That deals with Shadler versus Anthem. And, again, in that case, this court said we would stand ERISA on its head if we countenance bypassing the procedures provided by the statute for making benefit decisions in favor of making the initial benefit decision ourselves. The case should have been remanded to the administrator for the development of a full factual record. We don't have a full factual record. I thought there had been a delegation and they erroneously applied a de novo review on our plan that had been delegated and this plan was not delegated. Well, in that case, you're right. The standard of review was arbitrary and capacious. It was a reversal. It was a misapplication of the de novo standard when, in fact, they should have had deference to the agency. Sure. I think the difference is that the court here in Shadler said that bypassing, it's improper to bypass the ERISA procedures in the statute. Those procedures call for the plan to make a decision. So the standard of review didn't matter. That's not why the court in Shadler held that it was improper for the district court to make a decision in the first instance. It held that it was contrary to the ERISA procedures and the fact that there wasn't a fully developed record, and that's the same here. I thought that the district court had applied a de novo review. It did. And that was an error. But it was also talking, Your Honor, about— It was an error and that was— It was. It was. All right. Thank you, Your Honor. Is there a question? All right, Mr. Bacow, we appreciate it. I see why they send you to the Fifth Circuit. Thank you, Your Honor. But as interesting as an ERISA case can be, thank you both for able briefing, all seriousness. These are very serious cases and I'm not making light on them at all. It's tough trying to construe this language and trying to be uniform, but we do worry about unintended consequences, not just in the holding, but where does this go in terms of other cases that we have, and especially in ERISA where it gets sort of tricky. So your briefing is helpful and thank you both for responding to the panel's questions. We'll unravel it as best we can. Thank you. All right. Thank you. All right. We'll call the fourth case.